**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

<table>
<tr>
<td>

LOUIS VUITTON MALLETIER S.A.S.,

    Plaintiff,

v.

WESTGATE DISCOUNT MALL INC.,
BASIROU KEBBAY, and AARON
KEBE a/k/a AARON KEBBEH a/k/a
AARON KEBBAH,

    Defendants.

</td>
<td>

Civil Action No.
1:23-cv-01541-VMC

</td>
</tr>
</table>

**ORDER**

Before the Court are the following motions:

- Louis Vuitton Malletier S.A.S.'s ("Louis Vuitton") Motion for Default Judgment as to Westgate Discount Mall Inc. ("Westgate") (Doc. 53)[1];

- Louis Vuitton's Motion to Strike Basiriou Kebbay's Answer to Complaint (Doc. 57); and

- Basirou Kebbay Motion to Set Aside Default (Doc. 64).

For the reasons that follow, the Court enters the following Order.

---

[1] The Court will grant Louis Vuitton's Motion for Leave to File Matters Under Seal (Doc. 55) relating to that motion.

## Background[2]

### I.      The Parties and Marks

Louis Vuitton is a French company that manufactures, imports, sells, and distributes prestigious luxury merchandise such as handbags, luggage, apparel, shoes, scarves, jewelry, watches, and other fashion accessories bearing one or more of Louis Vuitton's federally registered trademarks ("Louis Vuitton Products"). (Doc. 1 ¶ 3). Since its founding in 1854 in Paris as a luggage and trunks business, Louis Vuitton has grown into one of the world's premiere fashion houses, known for its high-quality handbags, luggage, scarves, jewelry, watches and many other fashion and luxury goods. (Id. ¶ 14). To protect and maintain the image of the brand, Louis Vuitton Products are sold exclusively through company-owned and operated boutiques, some of which are located within high-end retail stores such as Neiman Marcus and Saks Fifth Avenue, through the Louis Vuitton website at http://us.louisvuitton.com, and through the website of its related company, Le Bon Marché, at http://www.24s.com. (*Id.* ¶ 15).

Louis Vuitton is the owner of numerous famous federally-registered trademarks, including, but not limited to, the LOUIS VUITTON and LOUIS VUITTON-formative word marks, the Toile Monogram Design mark, the LV Logo

---

[2] The following facts are drawn from Louis Vuitton's Complaint and are deemed admitted by Westgate's default. Quotation marks are omitted from Complaint excerpts to improve readability.

Design mark, the Stylized Flower Design marks, the Damier Design mark, the Epi Design mark, and the S-Lock Design mark (collectively, the "Louis Vuitton Trademarks"), which are federally registered for use in conjunction with a variety of goods, including, inter alia, handbags, accessories, and apparel. (*Id.* ¶ 16).

Westgate is a Georgia corporation which owns and operates an indoor flea market in Atlanta, Georgia called "Westgate Discount Mall" (the "Market"). (*Id.* ¶¶ 1, 5, 22). Louis Vuitton alleges that Defendant Basirou Kebbay owns Westgate and that Defendant Aaron Kebe is its Chief Executive Officer, Chief Financial Officer, Secretary, and registered agent. (*Id.* ¶¶ 6–7). Through its Complaint, Louis Vuitton alleges that Defendants have provided space to a host of individuals and businesses at the Market (collectively, "Tenants") that Defendants knew or had reason to know were selling or offering for sale goods and merchandise bearing counterfeits of Louis Vuitton's federally registered trademarks. (*Id.* ¶ 2).

Westgate provides all services necessary for their Tenants to operate at the Market. Among other things, the Tenants at the Market are provided with basic requirements such as space, security, parking, maintenance of the Market's grounds (including cleaning and repair), and restrooms. (*Id.* ¶ 23). They also had the ability to remove tenants by asking them to leave, not renewing their leases, terminating the leases, or evicting them. (*Id.* ¶ 24).

## II.     The Infringement

This is not Westgate's first tangle with the law over counterfeits. In *Luxottica Group S.p.A. v. Westgate Discount Mall*, No. 1:16-cv-00227-CAP (N.D. Ga. March 31, 2017), Westgate entered a Stipulation to Permanent Injunction permanently restraining and enjoining it from infringing, or knowingly assisting any other person or entity from infringing Ray-Ban trademarks. (*Id.* ¶ 25). Despite the foregoing, Westgate has failed to implement any rules or adopt or employ any practices or procedures that would reduce or eliminate the counterfeiting occurring at the Market. As a result, the Market, with Westgate's full knowledge, has become a hotbed for illicit activity with Tenants engaging in the open, notorious, or obvious sale of goods bearing counterfeit Louis Vuitton Trademarks. (*Id.* ¶ 26).

Louis Vuitton sent at least 31 notices to Westgate concerning specific Tenants at the Market who (a) had attempted to import products bearing counterfeit Louis Vuitton Trademarks to their booth location, but had such products seized by United States Customs and Border Protection or (b) who had been observed while they were engaged in the sale or offer for sale of products bearing counterfeit Louis Vuitton Trademarks by investigators acting on behalf of Louis Vuitton. (*Id.* ¶ 29). Further, investigators acting on behalf of Louis Vuitton have served by hand, and in plain view on the premises, at least 20 cease and desist

letters to Tenants of the Market who were engaged in the sale, or offer for sale, of products bearing counterfeit Louis Vuitton Trademarks. (*Id.* ¶ 30). Additionally, in plain view, and on numerous occasions prior to the filing of this action, law enforcement agencies seized counterfeit items from Tenants at the Market, including goods bearing counterfeit Louis Vuitton Trademarks. (*Id.* ¶ 31). In fact, and also in plain view, law enforcement has arrested several of the Market's counterfeiting Tenants, including those engaged in the sale of goods bearing counterfeit Louis Vuitton Trademarks. (*Id.*).

Most recently, on August 18, 2021, Georgia State Police, Fulton County Police, and the U.S. Department of Homeland Security – Homeland Security Investigations executed a search warrant on the Market to search for counterfeit goods. (*Id.* ¶ 32). During the execution of this search warrant, and upon information and belief, law enforcement searched nearly every booth at the Market (60 out of the 62 booths) and seized products bearing counterfeit and infringing trademarks in every single booth searched. (*Id.*).

A total of eighteen (18) tractor trailer loads of products bearing counterfeit and infringing trademarks were seized during the operation. (*Id.* ¶ 33). In all, more than 250,000 products were seized—including over 72,000 items bearing counterfeit and infringing Louis Vuitton Trademarks. (*Id.*). The fair market value of the counterfeit Louis Vuitton products seized is in the tens of millions of U.S.

dollars. The August 18, 2021 seizure that took place at the Market is one of the largest seizures of goods bearing counterfeit Louis Vuitton Trademarks in U.S. history. (*Id.* ¶ 34).

Based on the foregoing, Westgate was fully aware that Tenants at the Market were engaged in the sale, and offer for sale, of products bearing counterfeit Louis Vuitton Trademarks without Louis Vuitton's authorization. (*Id.* ¶¶ 37–39). Despite numerous warnings that their Tenants sold or offered for sale goods bearing counterfeit Louis Vuitton Trademarks, Westgate failed to supervise their premises and comply with their legal obligations to curb counterfeiting at the Market because it would make less money if they were to evict their counterfeiting Tenants. (*Id.* ¶ 41). In fact, if Westgate kicked out all the Market's counterfeiters, it would have few, if any, Tenants left, and its revenues and profits would plummet. (*Id.*). Moreover, Westgate reaps substantial financial benefits derived from the sale of counterfeit items at the Market, including, but not limited to, increased: customer traffic; numbers of Tenants; storefront/booth rental revenue; and value of their business. (*Id.* ¶ 42). It is therefore financially motivated to "turn a blind eye" to counterfeiting at the Market, or to affirmatively assist in the counterfeiting and protect its counterfeiting Tenants. (*Id.*). Westgate recklessly disregarded Louis Vuitton's rights or willfully blinded itself to permit the sale of counterfeit merchandise throughout the entire Market. (*Id.* ¶ 45). The counterfeiting of the

Louis Vuitton Trademarks at the Market is likely to cause, is causing, and will continue to cause a likelihood of confusion, deception and mistake on the part of consumers, the public, and the trade and has caused, and will continue to cause, irreparable harm to Louis Vuitton. (*Id.* ¶ 46).

III.   **Procedural History**

Louis Vuitton filed its Complaint on April 11, 2023. (Doc. 1.) Although Westgate was initially represented by counsel, its counsel moved to withdraw. (Doc. 20). On October 19, 2023, the Court issued an Order granting the motion to withdraw. (Doc. 21 at 1). The Court also noted in that Order that Westgate is a corporate entity that must be represented by counsel in this action. (*Id.* at 2) (citing *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381 1385 (11th Cir. 1985)). The Court therefore ordered Westgate "to retain new counsel who must file a notice of appearance with the Court within thirty days of the date of this Order," warning it that "failure to do so will result in default judgment against Defendant Westgate Discount Mall Inc." (*Id.*). Westgate failed to retain counsel after obtaining an extension, and the Clerk entered Westgate's default on April 16, 2024. Westgate did not file a response in opposition to the Motion for Default Judgment.

Meanwhile, Mr. Kebbay was served with the Complaint and Summons on April 15, 2023. (Doc. 42). Mr. Kebbay filed a motion to dismiss, but it was untimely and the Court denied it. (Doc. 43). In that Order, the Court wrote:

> [T]he Court will GRANT LEAVE for Mr. Kebbay to file an Answer to the Complaint. His Answer must be filed within 30 days following entry of this Order. Failure to file an Answer within the allotted time may result in a default judgment being issued against Mr. Kebbay.

(*Id.*). However, he did not timely answer, and the Clerk entered his default on July 15, 2024. Mr. Kebbay then obtained counsel and purported to Answer while already in default on September 22, 2024. (Doc. 51). Louis Vuitton moved to strike his answer on October 3, 2024 (Doc. 57), and Mr. Kebbay moved to set aside the default on December 10, 2024 (Doc. 64).

## Legal Standard

If a defendant fails to plead or otherwise defend a lawsuit within the time required by Federal Rule of Civil Procedure 12(a)(1)(A), upon motion, the clerk must enter default against the defendant pursuant to Federal Rule of Civil Procedure 55(a). A default constitutes admission of all well-pleaded factual allegations contained in the complaint, but is not considered an admission of facts that are not well-pleaded or conclusions of law. *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005). "Before a default can be entered, the court must have subject-matter jurisdiction and jurisdiction over the party against whom the judgment is sought, which also means that the party must have been effectively served with process." 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2682 (4th ed. 2008) (citations omitted).

Once a default has been entered, the Court has the "discretion in determining whether the judgment should be entered." *Patray v. Nw. Publ'g, Inc.*, 931 F. Supp 865, 868 (S.D. Ga. 1996) (internal footnote and citation omitted); Fed. R. Civ. P. 55(b); *see also Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir. 1985) ("The entry of a default judgment is committed to the discretion of the district court.").

Entry of default judgment is only warranted when there is "a sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975). Although *Nishimatsu* did not elaborate as to what constitutes "a sufficient basis" for the judgment, courts have subsequently interpreted the standard as being akin to that necessary to survive a motion to dismiss for failure to state a claim. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n. 41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Conceptually, then, a motion for default judgment is like a reverse motion to dismiss for failure to state a claim. *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 695 (5th Cir. 2015) (stating in the context of a motion for default judgment, "whether a factual allegation is well-pleaded arguably follows the familiar analysis used to evaluate motions to dismiss under Rule 12(b)(6)").

When evaluating a motion to dismiss, a court looks to see whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556); *Surtain*, 789 F.3d at 1245 (footnote omitted). "The court must therefore examine the sufficiency of plaintiff's allegations to determine whether plaintiff is entitled to an entry of judgment by default." *Fidelity & Deposit Co. of Md. v. Williams*, 699 F. Supp. 897, 899 (N.D. Ga. 1988). The Supreme Court has explained that the pleading standard of Rule 8 of the Federal Rules of Civil Procedure "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citations and quotations omitted). "This analysis is equally applicable to a motion for default judgment." *Edenfield v. Crib 4 Life, Inc.*, No. 6:13-CV-319-Orl-36KRS, 2014 WL 1345389, at *2 (M.D. Fla. Apr. 4, 2014) (adopting Report and

Recommendation) (citing *De Lotta v. Dezenzo's Italian Rest., Inc.*, No. 6:08-CV-2033-Orl-22KRS, 2009 WL 4349806, at \*5 (M.D. Fla. Nov. 24, 2009)).

Further, the Court may only enter a judgment by default without a hearing where the amount of damages is a liquidated sum or one capable of mathematical calculation. Fed. R. Civ. P. 55(b): *Jenkins v. Clerk of Court*, 150 F. App'x 988, 989 (11th Cir. 2005). Whether to hold a hearing is committed to the Court's discretion. *DIRECTV, Inc. v. Huynh*, 318 F. Supp, 2d 1122, 1129 (M.D. Ala. 2004) (citing Fed. R. Civ. P. 55(b)(2)).

A plaintiff requesting a default judgment award under Rule 55(b)(1) must provide an affidavit and evidence supporting that it is entitled to a specific, certain sum of money. *Lubin, Sarl, a French Co. v. Lubin N. Am., Inc.*, No. 1:13-CV-2696-AT, 2014 WL 11955396, at \*2 (N.D. Ga. Apr. 10, 2014). "A claim is not a sum certain unless there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default. Examples of actions seeking a sum certain include actions on money judgments and negotiable instruments." *Id.* (citations and internal punctuation omitted).

### Discussion

The Court first takes up Mr. Kebbay's Motion to Set Aside Default and Louis Vuitton's Motion to Strike Answer. Then the Court considers Louis Vuitton's Motion for Default Judgment against Westgate.

## I.     Motion to Set Aside Default

Mr. Kebbay seeks to set aside his default through his recently retained counsel. (Doc. 64). While Mr. Kebbay has participated in the litigation by filing a motion to dismiss and is now seeking to set aside the default, he has also "gone dark" for months at a time, which Louis Vuitton seizes on to characterize his default as willful.

A court "may set aside an entry of default for good cause." Fed. R. Civ. P. 55(c). There is no "precise formula" for establishing good cause, but courts "have considered whether the default was culpable or willful, whether setting it aside would prejudice the adversary, and whether the defaulting party presents a meritorious defense." *Noorani Trading, Inc. v. Bijani*, 1:17-CV-1344-LMM, 2019 WL 12520128 at *1 (N.D. Ga. March 18, 2019) (citing *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996)). "However, these factors are not exhaustive, as courts have examined other factors including whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default." *Id.* The Eleventh Circuit has made clear that entry of judgment by default is not granted as a matter of right and is judicially disfavored because there is a "strong policy of determining cases on their merits." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015) (citation

omitted); *see also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002) ("Entry of judgment by default is a drastic remedy which should be used only in extreme situations, . . . we must respect the usual preference that cases be heard on the merits rather than resorting to sanctions that deprive a litigant of his day in court.").

The Court agrees with Louis Vuitton that Mr. Kebbay has not shown good cause to set aside his default. While Mr. Kebbay did attempt to participate in the case, his motion to dismiss was filed ten months late, meaning he was already subject to entry of default. Even so, the Court gave him another chance to file an answer within 30 days, and explicitly warned him that "[f]ailure to file an Answer within the allotted time may result in a default judgment being issued against Mr. Kebbay." (Doc. 43).[3] Still, he did not file an Answer until three months later, and only after his default was entered. Meanwhile, years have passed since this case was filed and he was served. To require Louis Vuitton to start from scratch at this point would be unfair.

Moreover, the Court agrees with Louis Vuitton that Mr. Kebbay has not shown a meritorious defense, because the evidence shows that he owns the Market

---

[3] Mr. Kebbay's attempts to detract from a willfulness finding by arguing that he did not understand the Court's use of "may" or the ramifications of a default judgment misses the mark. The Court provided Mr. Kebbay a timeframe to act in and he chose not to act in that timeframe.

13

not withstanding his protestations otherwise.  (Doc. 65 at 12 n.2) (citing Doc. 37-1, -2). Though the Court is denying the motion to set aside default, Mr. Kebbay remains able to contest Louis Vuitton's damages as to him. Fed. R. Civ. P. 55(b)(2). And his arguments as to his reduced involvement in the Market are relevant in that respect. The Court will take up such arguments when Louis Vuitton brings a motion for default judgment against Mr. Kebbay at a later date; the instant Motion for Default Judgment was only sought against Westgate.

## II. Motion for Default Judgment

### A. Liability

"[L]iability for trademark infringement can extend beyond those entities that actually perform the acts of infringement." *Mini Maid Servs. Co. v. Maid Brigade Sys., Inc.*, 967 F.2d 1516, 1522 (11th Cir. 1992) (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 853 (1982)). Under the Lanham Act, the owner of a registered trademark may hold someone contributorily liable for trademark infringement if that person induces or knowingly facilitates the infringement. *Luxottica Grp., S.p.A. v. Airport Mini Mall, LLC*, 932 F.3d 1303, 1311 (11th Cir. 2019)).

To prevail on a claim for contributory infringement, the plaintiff must establish: "(1) a person or entity commits direct trademark infringement under the Lanham Act; and (2) the defendant (a) 'intentionally induces' the direct infringer to commit infringement, (b) supplies a 'product' to the direct infringer whom it

14

'knows' is directly infringing (actual knowledge), or (c) supplies 'a product' to the direct infringer whom it 'has reason to know' is directly infringing (constructive knowledge)." *Id.* at 1312. Willful blindness occurs when a person suspects wrongdoing and deliberately fails to investigate and is a form of constructive knowledge for contributory trademark infringement. *Id.* at 1313.

Westgate has admitted facts in the Complaint that establish its contributory trademark infringement liability. Tenants at the Market engage in the open, notorious, or obvious sale of goods bearing counterfeit Louis Vuitton Trademarks, and law enforcement agencies have seized counterfeit goods bearing counterfeit Louis Vuitton Trademarks from Tenants at the Market, including during the August 18, 2021 seizure which was one of the largest seizures of goods bearing counterfeit Louis Vuitton Trademarks in U.S. history. (*Id.* ¶¶ 26, 29, 30, 31, 34).

Westgate knew or had reason to know Tenants were offering for sale goods and merchandise bearing counterfeits of Louis Vuitton's federally registered trademarks. (*Id.* ¶ 2). Indeed, Westgate has received actual notice from Louis Vuitton's agents and investigators of such practice. (*Id.* ¶¶ 29–30). Westgate was thus fully aware that Tenants at the Market were engaged in the sale, and offer for sale, of products bearing counterfeit Louis Vuitton Trademarks without Louis Vuitton's authorization. (*Id.* ¶¶ 37–39). Westgate provides all services necessary for their Tenants to operate at the Market and maintains the ability to evict them

15

but has chosen not to. (*Id.* ¶¶ 23, 24). "[E]vidence of the defendants' knowledge of specific infringing acts by subtenants who relied on the services the defendants provided (including space, utilities, and maintenance)" supports a finding of contributory infringement. *Luxottica*, 932 F.3d at 1315. Accordingly, Louis Vuitton is entitled to a default judgment as to liability.

### B.      Remedies

Louis Vuitton seeks statutory damages instead of an award of its losses. 15 U.S.C. § 1117(a)–(c). The Lanham Act authorizes the Court to award a statutory damages amount of up to $200,000 per counterfeit mark per type of good sold or offered for sale, or $2,000,000 if the use was willful. *Id.* Westgate has admitted the willfulness of its actions, and the Court moreover agrees with Louis Vuitton that the record establishes willfulness here.

To establish the number of marks per type of good sold, Louis Vuitton offers the affidavit of John Maltbie, Director of Intellectual Property, Civil Enforcement for Louis Vuitton North America Inc. (Doc. 54 ¶ 1). Mr. Maltbie reviewed over 1,200 photographs taken during the seizure and inspected 14 goods that were obtained through undercover purchases. (*Id.* ¶ 25). He identified 44 types of goods and 292 marks used. (*Id.* ¶¶ 26–27). Based on the statutory maximum of $2,000,000 per each of the 292 marks used, Louis Vuitton seeks a total judgment of $584,000,000. Two factors support this maximum award: First, the strong evidence

of notice; Westgate has been subject to court orders to cease facilitating infringement but carried on anyway. Second, the sheer scale of infringement— Louis Vuitton contends that this was one of the largest seizures of its counterfeit goods in United States history. For these reasons, the Court will award the maximum statutory damages award of $584,000,000 against Westgate.

The Court will also grant Louis Vuitton's request for permanent injunctive relief.

> A plaintiff seeking a permanent injunction . . . . must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

"[T]he most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods. *Ferrellgas Partners, L.P. v. Barrow*, 143 F. App'x 180, 190–91 (11th Cir. 2005) (quoting *Int'l Kennel Club of Chi., Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1092 (7th Cir. 1988)). Louis Vuitton has sufficiently alleged facts which, as admitted by Westgate, establish irreparable harm to its brand on a massive scale by allowing an enormous amount of counterfeit goods to flood the market.

17

Damages alone cannot compensate for this injury because of the threat of future counterfeiting and brand diminishment. The balance of hardships favors Louis Vuitton because Westgate has no right to contributorily infringe its mark. And the public interest is served because consumers will be prevented from unknowingly purchasing counterfeit items on the secondary market.

### Conclusion

For the above reasons, it is **ORDERED** that Plaintiff's Motion for Default Judgment as to Westgate Discount Mall Inc. (Doc. 53) is **GRANTED**. It is

**FURTHER ORDERED** that, upon resolution of all claims in this case, the Clerk is **DIRECTED** to enter a final default judgment in favor of Plaintiff and against Defendant Westgate Discount Mall Inc. in the amount of $584,000,000. It is **FURTHER ORDERED** that Westgate, its officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of these persons or entities are **PERMANENTLY ENJOINED** from (1) manufacturing, advertising, selling, offering for sale, and distributing products bearing counterfeit Louis Vuitton Trademarks and (2) providing space to anyone who engages in the manufacturing, advertising, selling, offering for sale, and distributing of products bearing counterfeit Louis Vuitton Trademarks. It is

**FURTHER ORDERED** that Plaintiff's Motion for Leave to File Matters Under Seal (Doc. 55) is **GRANTED**. It is

**FURTHER ORDERED** that Plaintiff's Motion to Strike Basiriou Kebbay's Answer to Complaint (Doc. 57) is **GRANTED**. The Clerk is directed to strike Mr. Kebbay's Answer (Doc. 51) because it was filed after the Clerk entered his default. It is

**FURTHER ORDERED** that Basirou Kebbay's Motion to Set Aside Default (Doc. 64) is **DENIED**.

**SO ORDERED** this 22nd day of September, 2025.

_____
Victoria Marie Calvert
United States District Judge

19